EVANS LAW FIRM, INC.
INGRID M. EVANS (State Bar No. 179094)
3053 Fillmore Street, #236
San Francisco, CA 94123
Telephone: 415.441.8669
Facsimile: 888.891.4906
E-mail: ingrid@evanslaw.com

BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.
ANDREW S. FRIEDMAN (*pro hac vice* pending)
FRANCIS J. BALINT, JR. (*pro hac vice* pending)
2325 E. Camelback Road, Suite 300, Phoenix, AZ 85016
Telephone: 602.274.1100
Facsimile: 602.274.1199
E-mail: afriedman@bffb.com, fbalint@bffb.com

*Attorneys for Plaintiff and the Putative Class*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BETSY SULLIVAN, individually and as successor in interest, heir, personal representative and/or administrator to BETSY SCHARBER, deceased, and the ESTATE OF BETSY SCHARBER, on behalf of herself and all others similarly situated<br><br>Plaintiff,<br><br>vs.<br><br>UNITED OF OMAHA LIFE INSURANCE COMPANY, a Nebraska corporation<br><br>Defendant. | Case No.<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. **Violations of Cal. Bus. & Prof. Code §17200 *et seq.***<br>2. **Violations of Financial Elder Abuse, Welf. & Inst. Code §15600 *et seq.***<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Betsy Sullivan ("Ms. Sullivan"), individually and as successor in interest, heir, personal representative and/or administrator to Betsy Scharber, deceased, and the Estate of Betsy Scharber (collectively, "Plaintiff") brings this action against Defendant United of Omaha Life Insurance Company ("United of Omaha" or "Defendant") on behalf of herself, her deceased mother and

1

all other similarly situated senior citizens who purchased certain life insurance policies issued by United of Omaha and were damaged thereby. Plaintiff alleges the following on information and belief, except as to those allegations that pertain to Plaintiff, which are alleged on personal knowledge.

## INTRODUCTION

1. Plaintiff brings this class action on behalf of herself and all other beneficiaries of GILI or SILI policies issued or delivered in the State of California after January 1, 2013, who receive reduced death benefit payment because the United of Omaha GILI or SILI policies lapsed and were continued as Reduced Paid-Up Life Insurance for nonpayment of premiums without providing the required notice to policyholders and their designated third parties ("Lapsed Policy Class"). Cal. Ins. Code §§ 10113.71 and 10113.72 require insurance companies to: (1) allow policyholders to designate third parties to receive notice of the nonpayment of premiums prior to lapse; and (2) provide notice of nonpayment of premium to the policyholder and any designated third party 30 days prior to the lapse or termination of the policy. United of Omaha has systematically violated these California statutes by failing to provide the required notice of nonpayment and, continuing the policies as Reduced Paid-Up Life Insurance, which results in a significantly lower death benefit payout.

2. Finally, Plaintiff brings this class action on behalf of herself, her mother's estate and all other California residents who purchased or acquired an ownership interest in GILI or SILI products issued by United of Omaha when they were over the age of 65 (the "Elder Abuse Class"). Plaintiff alleges that United of Omaha, by its conduct alleged herein, took, depleted or retained personal property of the members of the Elder Abuse Class in bad faith, for a wrongful use and with intent to defraud in violation of Section 15610, et. seq. of the California Welfare and Institutions Code.

3. Plaintiff also seeks injunctive relief requiring United of Omaha to to provide notice to policyholders and their designated third parties prior to lapsing the policies. Plaintiff also seeks restitution, compensatory damages and punitive or treble damages as recoverable under California law.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over the subject matter of this action pursuant to 28

2

U.S.C. §1332(d) because the aggregate amount in controversy for this class action exceeds $5,000,000, and at least one member of the proposed Class (including Plaintiff) are citizens of a State different from Defendant. See Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

5. Venue is proper in this District pursuant to 28 U.S.C. §1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and Defendant has agents and is licensed to and does transact business in this Judicial District.

## PARTIES

6. Plaintiff Betsy Sullivan is the daughter of Betsy Scharber, who passed away on September 9, 2016, and is the successor in interest, heir, personal representative and/or administrator to Betsy Scharber, deceased, and the Estate of Betsy Scharber. Plaintiff and her mother were, at all times relevant herein, residents and citizens of the State of California.

7. Defendant United of Omaha is a Nebraska corporation headquartered in Omaha, Nebraska that is licensed to sell insurance in California and transacts substantial insurance business in California. Defendant develops, markets and sells individual life insurance and other insurance products. Defendant is registered with California's Secretary of State as a foreign corporation licensed to do business in California.

## FACTUAL ALLEGATIONS

**A. United of Omaha's SILI and GILI Policies**

8. United of Omaha is a life insurance company that sells a compliment of life insurance products, including universal, term and whole life insurance policies. Depending on the product, United of Omaha employs one of three levels of underwriting: traditional, simplified and guaranteed. For products subject to traditional underwriting, such as certain of its universal life and term life insurance products, United of Omaha conducts underwriting to evaluate the age, medical condition, use of tobacco and other criteria to determine whether to issue the policy and what premium to charge based on the applicant's risk classification. As part of the underwriting process, applicants are required to submit to a medical examination. By contrast, United of Omaha issues its SILI and GILI whole life

products based on limited or no medical underwriting. For its SILI products United of Omaha uses simplified underwriting, meaning that the company asks a limited number of medical and risk-based questions on the application, does not require a physical, and routinely issues the policy within one to two business days after the application is submitted for approval. For its GILI products, issued on a "guaranteed" basis, United of Omaha considers only the applicant's age, and conducts no medical underwriting before issuing the policy. The premiums charged for GILI products are higher than the premiums for SILI products (or fully underwritten policies) but Mutual of Omaha fails to disclose those material facts to prospective purchasers.

9. United of Omaha's SILI and GILI products are designed for people who do not qualify for traditional life insurance given their medical condition or other underwriting factors. However, the premiums for SILI and GILI are very high, often four or five times as expensive as a comparable traditional life insurance policy. Furthermore, as a result of surrender charges built into United of Omaha's SILI and GILI products, the death benefits and cash surrender values under these policies are very low in comparison to traditional life insurance. For example, if the insured dies within two years after buying a GILI from United of Omaha, they are likely to receive death benefits that are not much more than the premiums paid. Likewise, if the owner of a SILI or GILI surrenders the policy at any point, they will receive back only a fraction of the premiums paid.

10. Although United of Omaha's SILI and GILI products are very costly and provide only meager death benefits and cash values to the policyholders, they are very profitable to the insurance company and its agents. SILI and GILI products generate higher profits to United of Omaha, and higher commissions to the selling agent, than do traditional insurance products. SILI and GILI policies are more profitable to United of Omaha than traditional life insurance products because the company bears greatly reduced underwriting costs and other associated administrative and sales costs, and can issue these policies without the delay of an underwriting process. Profit margins are usually greater for these products. SILI and GILI policies are easier to sell because United of Omaha markets them to elderly prospects with the message that "you can't be turned down for insurance," and such policies can

be issued quickly without the need for underwriting, including submitting to a medical exam. Sales agents, in turn, are incentivized to sell SILI and GILI products given the lack of delay or risk of denial associated with underwritten life insurance products, and agents are typically paid up-front commissions rather than having to wait for partial commissions coinciding with the periodic modal payments typically associated with traditional life insurance products.  Mutual of Omaha reaps even higher profits when a GILI policy is sold to someone who already owns a Mutual of Omaha SILI policy because the policy owner is being charged a higher premium predicated on unkown health risks when, in fact, the company knows based on previous underwriting that it is bearing no such risk.

**B. United of Omaha Has Violated California's Statutes Prohibiting Financial Elder Abuse.**

11. California Welfare and Institutions Code § 15610.30(a) provides in relevant part:

"Financial abuse" of an elder or dependent adult occurs when a person or entity does any of the following:

(1) Takes, secretes, appropriates, or retains real or personal property of an elder or dependent adult to a wrongful use….

(2) Assists in taking, secreting, appropriating, or retaining real or personal property of an elder or dependent adult to a wrongful use….

12. United of Omaha has engaged in a pattern and practice of conduct directed at senior citizens constituting elder abuse in violation of § 15610.30(a).

13. United of Omaha has devised and orchestrated a scheme to intentionally target vulnerable senior citizens for the sale of its SILI and GILI products. In furtherance of this scheme, United of Omaha pushes its SILI and GILI policies on seniors through aggressive and high pressure sales tactics including cold-calls by sales agents, mail promotions and telephone solicitations by employees manning phone banks.  In many cases, United of Omaha mines its own policyholder records to locate and target existing elderly policyholders for the sale of new or additional SILI or GILI policies.

14. SILI and GILI policies can be easily sold through low-cost distribution channels, including the mail, internet, and phone solicitations. Because these policies are guaranteed to issue, United of Omaha operates sales mills by using mass impersonal solicitations through the mail, online applications, and phone, which instantaneously generate a large volume of profitable new business without the need for any physical interaction or personal advice from agents. Indeed, United of Omaha does not sell any other whole life insurance product other than SILI or GILI policies. United of Omaha systematically fails to meaningfully disclose to elderly and vulnerable sales prospects the high costs, onerous surrender charges and trivial benefits associated with its SILI and GILI products or the potential availability of less costly and far more favorable alternatives also offered for sale by United of Omaha. In fact, in many instances United of Omaha knows based on its own records that the senior citizens it is targeting for SILI and GILI sales qualify for its other life insurance products based on underwriting conducted with respect to such policies previously issued to the same insured.

15. United of Omaha intentionally targets and sells its SILI and GILI policies to very elderly prospects – including seniors who are 80 years old or older – for whom such life insurance (or any life insurance) provides no tangible benefits. United of Omaha uses its own policyholder database to target current SILI and GILI policyholders to purchase additional policies that are unnecessary in light of existing policies and burden senior policyholders with a high cost product that provides paltry benefits in relation to the premiums charged. Worse yet, as alleged below, United of Omaha uses its policyholder database to sell GILI policies to existing policyholders who recently passed underwriting requirements and qualified for less expensive SILI, thereby pocketing higher premiums without actually bearing the increased mortality risk supposedly associated with GILI products.

16. United of Omaha uses different channels to sell multiple policies to senior citizens. For instance, following the sale of an SILI or GILI product to an elderly policyholder brokered by an agent, United of Omaha uses this information from the initial sale to contact the same policyholder through a mail or telephone solicitation to pressure the policyholder into purchasing additional insurance. Because of the lack of underwriting and ease of the application process, United of Omaha effectively

pressureS elderly policyholders into purchasing additional coverage on the spot without any waiting period or other delay during which an elderly policyholder can seek advice regarding the purchase.[1]

17. Finally, as alleged below, United of Omaha systematically violates §§ 10113.71 and 10113.72 of the California Insurance Code by intentionally failing to provide advance written notice to elderly policyholders who fail to pay required premiums or to their beneficiaries that their SILI or GILI policies will lapse and convert to reduced paid-up coverage paying far lower death benefits than the initial policy face amount. By doing so, United of Omaha wrongfully appropriates and confiscates accumulated policy values for its own use and profit, which is an improper purpose under California Welfare and Institutions Code § 15610.30(a).

18. United of Omaha preys on elderly sales prospects for the sale of SILI and GILI policies precisely because they are vulnerable to high pressure sales tactics, because they are uninformed or likely to believe they cannot qualify for higher quality medically underwritten life insurance and because its SILI and GILI policies are more profitable than traditional life insurance products.

19. By their very design, the United of Omaha SILI and GILI policies are structured so that the elderly policyholders it targets will forfeit substantial sums to the company. If the insured dies during the first two years of issuance, the policies typically provide that the death benefits will barely exceed the amount of premiums paid by the owner. Conversely, if the insured lives for five years or more after policy issuance, the death benefit will be less than the premiums paid by the policy owner and the interest earned by the company over time. Thus, there is only a relatively brief period during which United of Omaha bears any significant risk under its SILI and GILI policies. Furthermore, given the advanced ages of the elderly prospects that United of Omaha targets for the sale of SILI and GILI policies, the company knows and expects that many of them will die during the two-year period when the death benefits barely exceed the premiums collected. In addition, by failing to provide advance

---

[1] While these elderly policyholders still have the right to cancel the sale without penalty under the statutorily-mandated 30-day free look period, the accelerated sales process and minimal initial monetary payment greatly diminish the likelihood that senior policyholders would feel compelled to reconsider and cancel their purchases during the free-look period.

7

notice of policy lapses resulting from unpaid premiums, as required by Cal. Ins. Code §§ 10113.71 and 10113.72, United of Omaha systematically reduces the death benefits payable to beneficiaries, thereby wrongfully appropriating premium dollars paid by the elderly policyholders.

20. For policyholders who do not die within the first two years, United of Omaha has designed the products to increase the likelihood that the policies will lapse. Because United of Omaha's AGILI and SILI products automatically continue as Reduced Paid-Up Life Insurance upon lapse, United of Omaha is liable for only a fraction of the full death benefit payable under the policy. As discussed below, United of Omaha perpetrates this scheme of inducing conversation to the Reduced Paid-Up Life Insurance following policy lapses by failing to give the required notices to the policyholder and designated third parties of the lapse as required by Cal. Ins. Code § 10113.72.

21. Accordingly, as a direct and proximate result of the policies' design and the elderly composition of the risk pool, United of Omaha has intentionally taken, appropriated and retained for a wrongful use the senior policy owners' premium dollars.

**C. United of Omaha Has Violated California's Statutes Requiring Notice to Policy Owners and their Designated Beneficiary Prior to Lapsing or Terminating a Policy for Nonpayment of Premiums**

22. Under Cal. Ins. Code §§ 10113.71 and 10113.72, United of Omaha is required to: (1) allow policyholders to designate a third party to receive notice of a potential lapse or termination of benefits for nonpayment of premium; (2) provide notice to the designated third party of any nonpayment of premiums prior to lapsing or terminating a policy; and (3) provide 30 days written notice prior to lapsing or terminating a policy.

23. This legislation was enacted to provide consumers with protection against losing insurance coverage due to a missed premium payment. Sections 10113.71 and 10113.72 protect against the loss of the full benefits provided under life insurance policies by ensuring that policyholders and their third party designees receive sufficient warning that their coverage may lapse, thereby converting to reduced paid-up coverage, due to nonpayment. These safeguards are particularly critical for senior citizens who own Mutual of Omaha SILI or GILI policies because elderly policyholders are more likely

8

to die in the near future than younger policyholders and the reduced paid-up coverage resulting from lapsation drastically lowers the benefits payable upon death.

24. United of Omaha's SILI and GILI policies allow a 31-day grace period for the payment of each premium. If any premium is not paid by the end of the grace period, the policies provide:

> [T]his policy will terminate as of the premium due date except as provided in the POLICY VALUES AND NONFORFEITURE OPTION section. You may reinstate this policy to a premium-paying basis by meeting the requirements of the reinstatement provision.

25. If the policy has not been surrendered, it may be reinstated for nonpayment of premiums within three years under the GILI policies or five years under the SILI policies if certain requirements are met, including submission of another written application, evidence of insurability that United of Omaha accepts, payment of all past due premiums plus interst, and repayment of any outstanding policy loans plus interest.

26. The United of Omaha GILI and SILI policies also contain a provision providing that when a policy has lapsed for nonpayment of premiums, but is not surrendered within 60 days of the due date of the unpaid premium, the policy "will automatically continue as reduced paid-up life insurance." For policies automatically continued as reduced paid-up life insurance, the death benefit payout is dramatically reduced.

27. United of Omaha systematically and intentionally fails to provide to provide the statutorily required advance notice to policyholders and any designated third parties under its SILI and GILI policies that such policies will lapse and be automatically continued as reduced paid-up life insurance. By failing to provide the notice required by Cal. Ins. Code 10113.71 and 10113.72, United of Omaha has failed to provide policyholders and designated third parties under the GILI and SILI policies with notice of their right to reinstate the policies in order to receive the full death benefits. . Absent this notice, any policy lapse is not effective. Upon death of the policyholder who did not receive the required notice of lapse, United of Omaha is required to pay the full death benefit as opposed to the deeply discounted reduced paid-up life insurance payout normally payable on lapsed policies.

28. United of Omaha's systematic failure to provide the required notice under Cal. Ins. Code 10113.71 and 10113.72 prior to lapsing and continuing its GILI and SILI policies as reduced paid-up life insurance has unlawfully and unfairly deprived policyholders and their beneficiaries of receiving the policies' full death benefits and has allowed the company to misappropriate the policyholders' premium dollars. United of Omaha intentionally disregards the notification requirements and improperly places lapsed policies in the status of reduced paid-up life insurance to avoid paying even the meager death benefits associated with its SILI and GILI products, thereby pocketing significant penalties resulting from the reduced paid-up life insurance payout.

29. Section 10113.71 and 10113.72 are remedial statutes adopted to protect policyholders by demanding mandatory compliance with the disclosure requirements. Defendant's systematic violation of Cal. Ins. Code §§10113.71 and 10113.72 is an "unlawful" business practice under Cal. Bus. & Prof. Code §§ 17200, *et seq*. Plaintiff does not assert any claims based on fraud. Nor does Plaintiff base any of her claims on allegations that Defendant's conduct was fraudulent.

## PLAINTIFF'S TRANSACTION

30. Plaintiff's elderly mother, Betsy Scharber ("Ms. Scharber") became a victim of United of Omaha's illegal business practices when she was solicited by a licensed agent of United of Omaha, through the mail and contacted directly by United or Omaha via phone. As a result of these solicitations, Ms. Scharber purchased three SILI and GILI insurance policies – the first on May 3, 2013 and two others on July 28, 2013. Although Ms. Scharber could have qualified under United of Omaha's full underwriting standards, United of Omaha and its agents preyed on Ms. Scharber by selling her three high-cost whole life policies requiring little or no underwriting by United of Omaha.

31. On May 2, 2013, when she was 84 years old, Betsy Scharber was solicited by an indepndent agent to apply for a simplified issue whole life insurance policy from United of Omaha. During the application process, Ms. Scharber was required to answer a limited number of questions about her health and participation in higher risk activities. She was not required to submit to a medical exam or respond to any other underwriting questions.

1    32. One day later, on May 3, 2013, United of Omaha approved Ms. Scharber's application
2 and issued the SILI policy (Policy No. UA9484306) in the face amount of $30,000. The annual
3 premium payment was $4,686.20. Ms. Scharber designated Plaintiff Betsy Sullivan as the primary
4 beneficiary under the policy and designated Ms. Sullivan as the third party required to receive notice
5 from United of Omaha when the premium on the policy is past due. United of Omaha's Third Party
6 Notice Request Form provides:

> You have the right to designate a person, in addition to yourself, to receive notice that your premium is pst due and has not been paid. This notice will be sent at least 30 days prior to the effective date of cacellation of your polcy certificate. This notice will state the amount of premium, the date by when the premium must be paid to avoid cancellation and the date on which coverage terminates.

33. Between May 3, 2013 and November 3, 2014, Ms. Scharber made premium payments totaling $7,309.80. Ms. Scharber did not make any further premium payments after November 2014 and the policy lapsed and continued as Reduced Paid Up Life Insurance. Prior to the policy lapsing and continuing as Reduced Paid-Up Life Insurance, United of Omaha did not provide the required notification of nonpayment of premium to Ms. Scharber or Plaintiff Betsy Sullivan. Had United of Omaha done so, Ms. Scharber or her daughter, Plaintiff Besty Sullivan, would have taken steps to avoid lapsation of the policy or, alternatively, would have reinstated the policy prior to Ms. Scharber's death.

34. Shortly after purchasing the first SILI policy, Ms. Scharber received contact from United of Omaha via the mail soliciting Ms. Scharber to purchase a guaranteed issue whole life insurance policy, which was guaranteed to issue without submitting to a physical exam or answering any health-related questions. Ms. Scharber submitted her application dated June 14, 2013, to purchase a GILI policy with a face amount of $10,000. Under this policy, if Ms. Scharber died in the first two years, her beneficiary would only receive return of 110% of the total premium paid. Ms. Scharber designated Plaintiff Betsy Sullivan as the primary beneficiary.

35. Effective July 28, 2013, United of Omaha issued Ms. Scharber a GILI policy (Policy No. UR2839449) policy with a face amount of $10,000. The annual premium payment was $1,674.00. Between July 28, 2013 and February 28, 2015, Ms. Scharber made premium payments totaling

11

1  $2,650.45. Ms. Scharber did not make any further premium payments after February 2015 and the
2  policy lapsed and continued as reduced paid up life insurance.

3        36.    On July 31, 2013, Ms. Scharber was contacted by phone by a United of Omaha Sales
4  and Solicitation Department employee who solicited her to purchase a GILI policy. Since she was
5  applying for a guaranteed issue life insurance policy, Ms. Scharber did not have to submit a physical
6  exam or answer any medical-related questions.

7        37.    Effective July 28, 2013, United of Omaha issued another GILI policy (Policy No.
8  2842182) with a face amount of $15,000. The annual premium payment was $2,505.00. Under this
9  policy, if Ms. Scharber died in the first two years, her beneficiary would only receive return of 110% of
10  the total premium paid. Ms. Scharber designated Plaintiff Betsy Sullivan as the primary beneficiary
11  under the policy.

12        38.    Between July 28, 2013 and February 28, 2015, Ms. Scharber made premium payments
13  on both GILI Policies totaling $6,616.52. Ms. Scharber did not make any further premium payments
14  after February 2015 and both GILI policies therfore lapsed and continued as Reduced Paid Up Life
15  Insurance. Prior to the policies lapsing and continuing as Reduced Paid-Up Life Insurance, United of
16  Omaha did not provide the required notification of nonpayment of premium to Ms. Scharber.

17        39.    Unlike here SILI product where Plaintiff received and completed a form specifically
18  used for designating a third party to receive any lapse notices, her two GILI product applications had an
19  abbreviated provision for designation of a third party buried at the bottom or on the last page of the
20  application. Ms. Scharber likely overlooked this section and did not designate any third party for
21  receipt of lapse notices for either of here GILI policies.

22        40.    Ms. Scharber passed away on September 9, 2016. Plaintiff Betsy Sullivan received the
23  following Reduced Paid Up Life Insurance payout:
24      a.   Policy No. UA9484306 – $750
25      b.   Policy No. UR2839449 – $1,490
26      c.   Policy No. UR2842182 – $2,235
27

41. United of Omaha retained nearly 90% of the premium paid under Policy No. UA9484306 in connection with the payout after Ms. Scharber's death. Had Plaintiff Sullivan received the notice of lapse required under §10113.72, she would have ensured that the policies were reinstated and that the premium payments remained current, which would have resulted in the payment of the full $30,000 death benefit after Ms. Scharber's death.

42. Similarly, United of Omaha retained nearly 44% of the premium paid under the two GILI policies in connection with the payout after Ms. Scharber's death.

43. United of Omaha violated Cal Ins. Code §§ 10113.71 and 10113.72 by lapsing Ms. Scharber's SILI policy and continuing it as Reduced Paid-Up Life Insurance without proving the required notice of nonpayment of premium to Ms. Scharber and Plaintiff Betsy Sullivan, who was designated by Ms. Scharber to receive such notice. Absent providing the required notice of nonpayment of premium, United of Omaha was required to keep to policies inforce and pay the full death benefits promised under the policies.

## CLASS ACTION ALLEGATIONS

44. Plaintiff brings this action individually and on behalf of all persons as the Court may determine to be appropriate for class certification treatment, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b). Plaintiff asserts class and representative claims against each Defendant under California Business & Professions Code §§17203 and 17204. Plaintiff seeks to represent two California classes are defined as follows:

> **Financial Elder Abuse Class**
> All persons who purchased, a simplified issue or guaranteed issue whole life insurance policy issued by United of Omaha Life Insurance Company when they were 65 years old or older while residing in the State of California (or, if deceased, the representative of the estate).
>
> **Lapsed Policy Class**
> All beneficiaries of simplified issue or guaranteed issue whole life insurance policies issued by United of Omaha in the State of California after January 1, 2013, who received the Reduced Paid-Up Life Insurane payout as the death benefit.

45. Excluded from the Class are Defendant and its parents, affiliates, predecessors, successors, officers, directors, agents, servants, or employees, and the immediate family members of such persons. Also excluded is any trial judge who may preside over this action. The terms "Classes" or "Class Members" refers collectively to the the Financial Elder Abuse Class and the Lapsed Policy Class.

46. The members of the Classes are so numerous that joinder of all members would be impracticable. Plaintiff reasonably estimates that the Class members number into the thousands or even tens of thousands. The precise number of Class members and their addresses are unknown to Plaintiff, but can be ascertained through appropriate discovery of Defendant's records. Class members may be notified of the pendency of this action by publication and/or other notice.

47. There is a well-defined community of interest in the relevant questions of law and fact affecting putative Class members. Common questions of law and fact predominate over any individual questions affecting Class members, including, but not limited to the following:

  a. whether Defendant committed elder abuse as defined in Welf. & Inst. Code §15600 *et seq.*;

  b. whether Defendant have been unjustly enriched at the expense of the Class;

  c. whether Plaintiff and members of the Classes have sustained damages;

  d. whether Plaintiff and the Classes are entitled to damages;

  e. whether Plaintiff and the Classes are entitled to injunctive, declaratory and/or other relief;

  f. whether Defendant failed to comply with the requirements of Cal. Ins. Code §§ 10113.71 and 10113.72 to: (1) allow designation of a third party to receive notice of nonpayment premium; and (2) provide 30 days' notice to policyholders and their designated third party prior to lapsing a GILI or SILI policy and continuing it as Reduced Paid-Up Life Insurance; and

g. whether whether Defendant's violation of Cal. Ins. Code §§ 10113.71 and 10113.72 constitutes an unlawful business practices in violation of Bus. & Prof. Code § 17200.

48. Plaintiff's claims are typical of those of the absent Class members. If brought and prosecuted individually, the claims of each Class member would require proof of many of the same material and substantive facts, rely upon the same remedial theories, and seek the same relief.

49. The claims of Plaintiff and other Class members have a common origin and share a common basis. The claims originate from the same unlawful conduct by Defendant.

50. Plaintiff's claims are sufficiently aligned with the interests of the absent members of the Classes to ensure that the Class claims will be prosecuted with diligence and care by Plaintiff as representatives of the Classes.

51. Plaintiff will fairly and adequately protect the interests of the Classes and have no interests adverse to or that directly and irrevocably conflict with the interests of other Class Members.

52. Plaintiff is willing and prepared to serve the Court and proposed Classes in a representative capacity with all the obligations and duties material thereto.

53. Plaintiff has retained the services of counsel, identified below, who are experienced in complex class-action litigation, particularly class actions involving insurance matters, who will adequately prosecute this action, and will otherwise assert, protect and fairly and adequately represent Plaintiff and all absent Class members.

54. Moreover, a class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

a. individual claims by the Class Members would be impracticable as the costs of pursuit would far exceed what any one Class Member has at stake;

b. little individual litigation has been commenced over the controversies alleged in this Complaint, and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions;

c. the concentration of litigation of these claims in one forum will achieve efficiency and promote judicial economy; and

d. the proposed Class action is manageable.

**COUNT I**
**Violation of California Business & Professions**
**Code §§17200 et seq.**

**(by Plaintiff and the Lapse Policy Class against Defendant)**

55. Plaintiff and the Lapse Policy Class repeat and reallege all allegations contained in the Complaint as if set forth separately in this Cause of Action.

56. California Business and Professions Code §17200 prohibits any "unlawful . . . business act or practice."

57. Defendant has violated California Business and Professions Code §17200's prohibition against engaging in an unlawful act or practice with respect to Plaintiff and the Lapsed Policy Class by, *inter alia*,:

a. failing to provide GILI and SILI policyholders and their designated third parties notice of nonpayment of premiums under prior to lapsing a GILI and SILI policy and continuing it as Reduced Paid-Up Life Insurance policy; and

b. paying the Reduced Paid-Up Life Insurance amount as the death benefit to beneficiaries under GILI and SILI policies where the policies lapsed and were continued as Reduced Paid Up Life Insurance policies without providing the staturotiy required notice of nonpayment of premium to policyholders and their designated third parties.

58. Plaintiff and the Lapsed Policy Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this day.

59. California Business and Professions Code §17200 prohibits any "unlawful … business act or practice." As detailed in the preceding paragraphs, Defendant engages in a systematic practice of selling GILI and SILI policies to the Classes, in violation of state law and the fundamental policies

delineated in statutory provisions. Defendant's systematic violations of the law, including the unlawful failure to provide the required notice of nonpayment of premium prior to lapsing a GILI or SILI policy and continuting the policy as a Reduced Paid-Up Life Insurance policy, which results in a lower death benefit payout, constitute unlawful business acts or practices.

60. Because of Defendant's practices, Plaintiff and the Lapsed Policy Class have suffered injury-in-fact, including but not limited to, incurring financial losses that Plaintiff and Class members would not otherwise have incurred, and receiveing significantly discounted death benefit payouts.

61. Unless Defendant is enjoined from continuing to engage in and pursue the unlawful business practices described above, members of the public residing within California will continue to be injured.

62. Pursuant to California Business and Professions Code §17203, Plaintiff seeks an order requiring Defendant to immediately cease such acts of unlawful business practices and returne the full amount of money benefits improperly withheld, including income derived from these funds, plus interest and attorneys' fees.

**COUNT II**
**Financial Elder Abuse, California Welfare & Institutions Code §15600 *et seq*.**

**(by Plaintiff and the Financial Elder Abuse Class against Defendant)**

63. Plaintiff and the Financial Elder Abuse Class repeat and reallege all allegations contained in the Complaint as if set forth separately in this Cause of Action.

64. Defendant's conduct constitutes financial abuse under California Welfare and Institutions Code §15657.5 et seq., as defined in California Welfare and Institutions Code §15610.30. Section 15610.30(a) provides in relevant part:

    a. "Financial abuse" of an elder or dependent adult occurs when a person or entity does any of the following:

        i. Takes, secretes, appropriates, or retains real or personal property of an elder or dependent adult to a wrongful use …

    ii. Assists in taking, secreting, appropriating, or retaining real or personal property of an elder or dependent adult to a wrongful use ….

65. At all relevant times, Defendant took and/or assisted in the taking of property from Plaintiff and the Financial Elder Abuse Class for their own wrongful use, in that taking the money was unlawful.

66. Defendant took or secreted money away from Plaintiff and the Financial Elder Abuse Class by engaging in improper sales tactics designed to prey on vulnerable seniors and burden them with high cost product, with meager benefits. Defendant acted with an awareness of their wrongdoing and realized that their conduct would substantially assist the accomplishment of the wrongful conduct.

67. Defendant's conduct was reckless and/or oppressive within the meaning of California Welfare and Institutions Code § 15657.5 *et seq*.

68. Under California Welfare and Institutions Code §15657.5 *et seq*., Defendant are liable for reasonable attorneys' fees and costs for investigating and litigating this claim.

69. Under California Civil Code §3294 and California Welfare and Institutions Code §15657.05(a), Defendant are liable for punitive damages.

70. Defendant are liable for treble damages and penalties under one or more of the following grounds, any one of which suffices under California Civil Code § 3345: (a) Defendant knew or should have known their conduct was directed to an elder; (b) Defendant's conduct caused one or more senior citizens to suffer substantial loss of property set aside for retirement or for personal or family care and maintenance; and/or (c) Defendant's conduct cause one or more senior citizens to suffer substantial loss of assets essential to the health or welfare of the senior citizen; and/or (d) one or more senior citizens within the Class are substantially more vulnerable than other members of the public to the Defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and actually suffered substantial physical, emotional, or economic damage resulting from the Defendant's conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself, the Classes, and the public, prays for judgment against Defendant as follows:

A. An order certifying this action as a Plaintiff class action under Rule 23 of the Federal Rules of Civil Procedure as set forth herein;

B. For a temporary, preliminary and permanent order for injunctive relief enjoining Defendant from pursuing the unlawful practices complained of above;

C. For a temporary, preliminary and permanent order for injunctive relief requiring Defendant to undertake an immediate public information campaign to inform members of the public as to their prior practices and notifying the members of the proposed Classes of the potential for restitutionary relief;

D. For an order requiring disgorgement and restitution of Defendant's ill-gotten gains and to pay restitution to Plaintiff, the Classes, and the public all funds acquired by means of any practice declared by this Court to be unlawful;

E. For compensatory, special and general damages according to proof and as the Court deems just and proper;

F. Assuming certification of the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, for distribution of any moneys recovered on behalf of the public, or the Classes, via fluid recovery or *cy pres* recovery where necessary to prevent Defendant from retaining any of the profits or benefits of their wrongful conduct;

G. For punitive and exemplary damages under Welf. & Inst. Code §15657(a), Civil Code §3294; and as to counts for which they are available under the applicable law in such amount as the Court deems just and proper;

H. For treble damages and penalties under Civil Code §3345; Bus. & Prof. Code §§6153, 6175.4, 6175.5 and 17206.1; and Ins. Code § 789; and as to counts for which they are available under the applicable law in such amount as the Court deems just and proper;

1      I.    For double damages under Probate Code §859; and as to counts for which they are available under the applicable law in such amount as the Court deems just and proper;

    J.    For transfer of the wrongfully obtained monies and/or property under Probate Code §§850-859 et seq.;

    K.    Imposition of a constructive trust, an Order granting recessionary and injunctive relief and/or such other equitable relief, including restitution, disgorgement of ill-gotten profits and an order requiring Defendant to provide corrective notice to Class Members as set forth herein and as the Court deems just and proper;

    L.    An appropriate claims resolution facility to administer the relief in this case;

    M.    For reasonable attorneys' fees and costs of investigation and litigation under, among other statutes, C.C.P. §1021.5; Welf. & Inst. Code §§15657.05 *et seq.*, 15657.5 *et seq.*; C.C.P. § 2033.420/FRCP 37(c); and the common fund doctrine;

    N.    For costs of lawsuit, pre-judgment, and post-judgment interest; and

    O.    Such other and further relief as the Court may deem necessary or appropriate.

**JURY DEMAND**

Plaintiff and the Class hereby demand a trial by jury.

DATED: January 24, 2017

    EVANS LAW FIRM, INC.

    /s/Ingird Evans
    INGRID EVANS (SBN 179094)
    3053 Fillmore Street, #236
    San Francisco, CA 94123
    Telephone: 415.441.8669
    Facsimile: 888.891.4906
    E-mail: ingrid@evanslaw.com

    BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.
    ANDREW S. FRIEDMAN
    FRANCIS J. BALINT, JR.
    2325 E. Camelback Road, Suite 300, Phoenix, AZ 85016
    Telephone: 602.274.1100
    Facsimile: 602.274.1199
    E-mail: afriedman@bffb.com, fbalint@bffb.com
    *Attorneys for Plaintiff and the Putative Class*